STATE v. PAGIALAKIS.

No. 4239. Decided May 9, 1925. Rehearing denied July 22, 1925.
(238 P. 256.)

Appeal from Seventh District.

1.  HOMICIDE—EVIDENCE HELD SUFFICIENT TO SUSTAIN VERDICT OF
    VOLUNTARY MANSLAUGHTER.   In prosecution for murder, evi-
    dence *held* sufficient to sustain a verdict of voluntary man-
    slaughter.[1]

2.  HOMICIDE—REQUESTED INSTRUCTION, OMITTING ESSENCE OF RIGHT
    OF SELF-DEFENSE, HELD PROPERLY REFUSED.   In prosecution for
    murder, where the homicide took place while a train, contain-
    ing strike breakers, moving into a mining area, was attacked
    by armed strikers, a requested instruction that, if persons ran
    up towards the train for the purpose of picketing it in a peace-
    able manner, and the guards fired and shot at them, they had
    the legal right to return the fire, and if, in so doing they
    killed deceased, they were justified, was properly refused, as
    omitting the very essence of the right of self-defense.

3.  HOMICIDE—EVIDENCE OF FORMER ATTACK BY STRIKERS ON TRAIN
    NEAR SCENE OF HOMICIDE HELD ADMISSIBLE AS ESTABLISHING
    MOTIVE.   In prosecution for murder, where the homicide took
    place while a train, containing strike breakers, moving into a
    mining area, was attacked by armed strikers, evidence that
    about one month before a crowd of armed strikers near scene
    of homicide had searched a train, and removed and mistreated
    suspected strike breakers, was admissible as tending to show
    state of hostility and ill will between the striking miners and
    their employers, and thus establishing a motive for the homi-
    cide charged, although it was not shown that the accused was
    present or participated in the previous assault.

4.  HOMICIDE—EVIDENCE OF A FORMER ATTACK ON MINING TRAIN BY
    ARMED STRIKERS ADMISSIBLE AS TENDING TO SHOW PROBABLE
    AGGRESSOR.   In prosecution for murder, where accused alleged
    that the guards on train coming into a mining area fired on
    the strikers without cause, and strikers returned the fire in
    self-defense, evidence that one month previous a crowd of armed
    strikers had searched the train near the scene of the homicide,
    and had removed and mistreated strike breakers, was admissi-
    ble as tending to show which party was the probable aggressor.

Appeal from District Court, Seventh District, Emery
County; *George Christensen*, Judge.

[1] *State* v. *Kukis*, 65 Utah, 362, 237 P. 476.

Headnote 1.   30 C. J. p. 317.
Headnote 2.   30 C. J. p. 383.
Headnote 3.   30 C. J. pp. 180, 406.
Headnote 4.   30 C. J. p. 247.

Mike Pagialakis was convicted of voluntary manslaughter, and he appeals.

**AFFIRMED.**

*King & Schulder*, of Salt Lake City, for appellant.

*H. H. Cluff*, Atty. Gen., and *L. A. Miner*, Asst. Atty. Gen., for the State.

CHERRY, J.

Appellant was convicted of voluntary manslaughter and appeals. He was jointly accused with Pete Kukis and 12 others of the murder of A. P. Webb, in Carbon county, on June 14, 1922. Kukis was tried separately in Carbon county, and convicted of murder in the second degree, which conviction was affirmed by this court at the present term. *State* v. *Kukis*, 65 Utah ——, 237 P. 476. Appellant was granted a change of venue to the district court of Emery county, where he was tried separately and convicted of voluntary manslaughter. The principal ground relied upon in support of the appeal is the claim that the evidence is insufficient to support the verdict.

The homicide arose out of a conflict between striking coal miners and the agents and employés of their former employers, during the pendency of a strike in the Carbon county coal fields in 1922. A detailed description of the homicide, including the circumstances leading up to it, is contained in *State* v. *Kukis*, supra, and need not be repeated here. It is sufficient to say generally that, while a railroad train containing "strike breakers" and a number of armed guards was moving up Spring Canyon towards a coal mine, the train was attacked by a large number of strikers armed with rifles, revolvers, and clubs, who came from the direction of a strikers' camp at New Helper, a short distance below. Several hundred shots were fired by the strikers, and a less number by the guards on the train. Webb, who was acting

as fireman on the locomotive was shot and killed. That the homicide was committed by a crowd of 100 or more strikers, principally Greeks, acting in concert and pursuant to a common motive and purpose, was clearly shown by the evidence. The appellant denied that he was present or participated in the battle, but claimed that he was at Sunnyside, a coal camp some 35 or 40 miles away. It was further claimed in his behalf that the strikers who did fire at the train did so in lawful self-defense, after they had been first unlawfully assaulted and shot at by the guards on the train, and that, even if appellant had been present at and participating in the shooting, he would not be guilty.

Three witnesses for the state testified that, immediately after the shooting ceased, they went to the relief of a striker who had been wounded in the affray, placed him in an auto truck, and within 10 minutes started to drive rapidly down the canyon. Fifteen or more men, obviously of the attacking party, had boarded the truck with the wounded man. The truck passed a group of others within a short distance, and a little later on passed a man standing alone in the road, bareheaded, with a rifle in his hand, who was identified as appellant. Further down the canyon a larger number of men were seen moving down canyon, and away from the scene of the shooting, and towards the strikers' camp below. The point where the appellant was seen standing in the road was at a place from which some of the shots were shown to have been fired. It was a fair inference, under the circumstances, that the men passed by the truck on its way down the canyon were members of the attacking party.

The appellant is a Greek. He was a member of the coal miners' union, and went out on the strike when it was first called. He had resided at a strikers' camp or colony at Sunnyside, a coal camp situated about 40 miles from the scene of the shooting in question. He and numerous of his friends and associates testified that at the time of the shooting he was in the strikers' camp at Sunnyside. On the other hand, three witnesses for the state positively identified him as being at the scene of the shooting, with a rifle in his hand,

directly after the shooting ceased. Much is said in argument by appellant's counsel in derogation .of the state's evidence on this subject, but we are not concerned with the weight of evidence or the credibility of witnesses. Those questions were within the exclusive province of the jury; and in this case the jury had the right to believe the witnesses for the state, as against those of the appellant.

It is contended, however, that, giving full credence to the witnesses for the state, the evidence is insufficient to support the verdict. It is asserted and reiterated that "the state offered no evidence that the defendant was present at the time of the killing, or that he in any manner participated therein, and no evidence was offered that in any manner tended to show that the defendant had ever entered into any conspiracy with any other person or persons to commit the act charged," and cases and texts are cited to the effect that mere presence of a defendant at the commission of a crime, or sympathy with the principal committing it, or mental approval or consent to the same, etc., unless the defendant participated in the felonious design of the principal committing the crime, does not amount to such aiding and abetting of the actual perpetrator as would make the defendant liable as a principal.

It is further argued that there can be no conspiracy to commit the crime of manslaughter, and the proposition is advanced that "the offense of manslaughter, from its legal character, excludes the possibility of an accessory before the fact as an element in its composition." There is a diversity of opinion upon this question among the authorities, but the subject need not detain us here, because the question is not involved at all in this case. It was not claimed, and there was no evidence to show, that appellant was an accessory to the crime. As defined at common law, an accessory is one concerned in the commission of an offense, but not present at its performance. If he is present, aiding and abetting the fact to be done, he is a principal. 4 Bl. Com. c. 3.

The whole argument of appellant's counsel in this connection proceeds upon an erroneous estimation of the evidence

and the theory upon which the case was tried. The case was submitted to the jury upon the theory that appellant was actually present and participating in the unlawful assault, and that he either fired the fatal shot, or, being present, aided and abetted the person who did actually fire it.

The judgment appealed from depends upon the sufficiency of the evidence to warrant the jury in finding that the defendant was present and participating in the felonious assault. That there was an unlawful and felonious assault by a crowd of strikers, principally Greeks, acting together and for a common purpose, was clearly shown. As stated in the Kukis Case (where the evidence of the assault was substantially the same as here) :

"As the train emerged from the tunnel, one of the Greeks swung a club over his head, which was followed by shooting from down below, where the Greeks were. There is a just inference that every one of the crowd of Greeks coming up the wagon road, under the circumstances described by the witnesses, was there for a common and unlawful purpose, and participated or aided and abetted in the assault. * * * There thus is evidence to justify a finding of a combination or confederacy or a concert of action of this armed crowd or mob hurriedly coming up the canyon road, with a unity of purpose and design, and with force and violence, to make an unlawful and felonious assault upon those on the train; that all who were members or a part of such crowd or mob especially those who were armed participated in the assault, or aided and abetted therein."

The question to be decided is therefore this: Is the evidence sufficient to warrant the conclusion that the defendant was present as a member and a part of the assaulting group, and that he participated or aided or assisted in the assault? The question must be answered in the affirmative. There was substantial evidence to the effect that the homicide was committed by a group of striking coal miners, principally Greeks, acting together, with the motive and purpose to promote the strikers' cause. The appellant was a striker, and hence had the motive for engaging in the assault. Until just prior to the emergence of the train from the tunnel no persons were present at the place from which the shots were fired at the train. The group of men, among

whom the appellant was later seen, appeared on the scene from the direction of the striker's camp immediately prior to and at the time the train appeared. The assault and shooting, resulting in the homicide, then occurred. Within 10 or 11 minutes after the shooting ceased, and before the assailants had dispersed, appellant was seen standing in the road at a place from which shots had been fired, bareheaded, with a rifle in his hands. Both above and below him, along the road, members of the attacking party were moving down the road, away from the scene of the shooting and towards the strikers' camp.

This evidence amounts to much more than showing the mere presence of appellant at the commission of the offense. It shows a connection and association and a common motive with those who committed the offense. It shows the appellant present at the actual scene of shooting with a weapon in his hands, surrounded with kindred spirits who certainly did participate in the felonious assault. The inference that the appellant was present at and participated in the felonious assault and homicide is reasonable and legitimate, and the verdict of the jury is supported by sufficient evidence.

Numerous objections and alleged errors relating to the court's charge to the jury are assigned and argued. The objections urged are mainly the same as those made in *State* v. *Kukis,* supra, and what was said there relating to the instructions disposes of similar questions presented here, and need not be repeated. One objection, however, is made here which was not presented in the Kukis Case. In this case the court instructed the jury with relation to those circumstances under which the killing of a human being is justifiable, including self-defense. The instructions given fully and fairly defined the law upon the subject, and no particular complaint is made that any principle of law was misstated or omitted. It is merely asserted that the law was not fully set forth in the instructions given, and that the court erred in refusing to give an instruction requested by appellant to the effect that if persons ran up

towards the train for the purpose of picketing the train in a peaceable manner, and the guards upon the train fired and shot at said persons, they had the legal right to return such fire, and if in so doing they killed the deceased they were justified in so doing. The requested instruction was erroneous and improper, because it omitted the very essence of the right of self-defense. There are no valid grounds for appellant's objections to the court's instructions to the jury.

Over the objection and exception of appellant's counsel, the court admitted evidence offered by the state that, one month before the homicide in question, a crowd of about 150 strikers came up the canyon road from the direction of the strikers' camp at New Helper to a point on the railroad near the scene of the shooting in question, some carrying banners, and others armed with guns; that guns were drawn on the men in charge of a train, cars broken open, and the train searched for strike breakers; that one man, suspected of being a strike breaker, was taken off the train and, after being mistreated, was sent or taken back down the canyon. It was not shown affirmatively that appellant was present or participated in the assault, and he later testified that he was not present, but was at Sunnyside at the time.

It is contended that the admission of this evidence was erroneous, and constituted prejudicial error, because the presence at and participation in the transaction by the appellant was not proved. Appellant's counsel have cited no legal authority in support of this contention. We think the evidence was properly admitted. It tended to show a state of hostility and ill will between the striking miners, to which particular class the appellant belonged, and their former employers, and thus to establish the motive and intent for the assault and homicide charged in the information. The two transactions were connected by a unity of  **3, 4** motive, and were shown to have been participated in by the same class or group of persons. The homicide charged having been committed by a large number of men acting in concert, it was proper to prove and characterize it as a composite act; and the evidence complained of certainly was

competent for that purpose. There is a further reason for the reception of the evidence. The appellant, while claiming that he was not present, asserted through his counsel that the guards upon the train were unlawfully armed, and that they fired upon the strikers without cause, and that the strikers returned the fire in lawful self-defense, and that, even though appellant was present and participating in the affray, he was not guilty of any offense. The evidence complained of thus became admissible as tending to show which party was the probable aggressor. *Witham* v. *State*, 149 Ark. 324, 232 S. W. 437.

Numerous other assignments of error are based upon exceptions to the rulings of the trial court upon the admission and rejection of evidence, which have been argued by appellant's counsel in a very general way. We have carefully examined them all, but find no matter of substance involved or serious error committed.

Judgment affirmed.

GIDEON, C. J., and THURMAN, FRICK, and STRAUP, JJ., concur.